TROUTMAN PEPPER HAMILTON SANDERS LLP
Steven D. Allison, Bar No. 174491
steven.allison@troutman.com
Christy A. Markos, Bar No. 322278
christy.markos@troutman.com
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendant
FIREMAN'S FUND INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WOOD INVESTMENTS, INC.,<br><br>Defendant. | Case No. 8:23-cv-02200<br><br>**FIREMAN'S FUND INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Fireman's Fund Insurance Company ("Fireman's Fund" or "Plaintiff"), by and through its undersigned counsel, hereby submits this Complaint against Defendant Wood Investments, Inc. ("WIC" or "Defendant")[1] and complains and alleges as follows:

## INTRODUCTION

1. Fireman's Fund seeks a declaration concerning the rights and obligations of Fireman's Fund and WIC under an insurance policy numbered USC010220210 (the "Policy") for the policy period of November 30, 2021 to November 30, 2022, with respect to real property purchased by White Lane LLC ("White Lane") and located at 2300 White Lane, Bakersfield, California, 93304 (the "Bakersfield Property").

2. The Policy provides property and casualty insurance coverage for the entities listed on the Policy's Named Insured Schedule and for the specific properties listed in the Locations Schedule. Neither White Lane nor the Bakersfield Property appear in the Named Insured Schedule or the Locations Schedule of the Policy. Nonetheless, WIC asserts that it is entitled to coverage under the Policy for the Bakersfield Property in connection with a fire that occurred at the Bakersfield Property hours before WIC or its agent, Alliant Insurance Services, Inc. ("Alliant"), even requested that coverage be bound for White Lane and/or the Bakersfield Property.

3. Accordingly, Fireman's Fund seeks a judgment declaring that (a) the White Lane and the Bakersfield Property were never added to the Policy, (b) the Policy does not insure White Lane or the Bakersfield Property, (c) Fireman's Fund has no obligation to indemnify WIC for any damages on or to the Bakersfield Property, and that (d) Fireman's Fund is not obligated to otherwise pay any

---

[1] Fireman's Fund is informed and believes that Wood Investments, Inc. is registered with the California Secretary of State, and is also known, as Wood Investments Companies, Inc.

amounts to WIC in connection with losses sustained as a result of damages on or to the Bakersfield Property.

4. Fireman's Fund is informed and believes that WIC seeks reformation of the policy to extend coverage to the Bakersfield Property and/or White Lane. As a result, and in the alternative, if the Court determines that the Policy should be reformed to extend coverage to the Bakersfield Property and/or White Lane, Fireman's Fund seeks rescission of the Policy as to the Bakersfield Property and/or White Lane. When WIC preliminarily applied for coverage for the Bakersfield Property under the Policy, and then again when it finally requested coverage to be bound after the subject fire, WIC failed to disclose that numerous fires had occurred at the Bakersfield Property in the years and months leading up to White Lane's acquisition of the Bakersfield Property. Upon information and belief, WIC had knowledge of these fires, yet WIC concealed this information from Fireman's Fund. The occurrence of these fires would have been material to Fireman's Fund in evaluating the risk that WIC was asking Fireman's Fund to undertake. Had Fireman's Fund known of this material information, Fireman's Fund would not have offered to provide insurance for the Bakersfield Property on the same terms and would not have agreed to provide coverage for the Bakersfield Property or to White Lane under the Policy.

## PARTIES

5. Fireman's Fund is a business incorporated under the laws of Illinois with its principal place of business in Chicago, Illinois. As such, Fireman's Fund is a citizen of Illinois within the meaning of 28 U.S.C. § 1332(c)(1).

6. On information and belief, WIC is a California corporation that is headquartered in Orange County, California. As such, WIC is a citizen of California within the meaning of 28 U.S.C. § 1332(c)(1).

///

///

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity of citizenship between Fireman's Fund and WIC.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(1). Upon information and belief, WIC resides in this District.

## FACTUAL BACKGROUND

## THE POLICY

9. Fireman's Fund issued the Policy to WIC, for the Policy Period of November 30, 2021 to November 30, 2022. Attached as "**Exhibit A**" hereto is a true and correct copy of the Policy.

10. Subject to its terms, conditions, and exclusions, the Policy provides coverage under multiple insuring clauses for specifically listed real property locations (the "Locations"). The Policy also identifies certain entities as named insureds under the Policy in a Named Insured Schedule.

11. The Policy provides blanket Business Real Property limits of $226,425,402 for Locations specified as 1-5, 7-11, 14-15, 20, 22-23, $8,040,000 for Location 16, and $7,400,000 for Location 21. The Policy includes blanket limits of $29,841,327 for Business Income and Extra Expense for Locations 1-5, 7-11, 14-15, 18, 20, 22-23.

12. Subject to the terms and conditions as more fully set forth in the Policy, the Policy provides:

**Section I. Property Coverage**[2]

A. If a Limit of Insurance for Business Real Property or Business Personal Property is shown in the Declarations, then we will pay for direct physical loss or damage to **Property Insured** while at a **location**, including such property in the

---

[2] Bolded terms are defined in the Policy.

open (or in a vehicle in the open) within 1,000 feet of such location, caused by or resulting from a **covered cause of loss** during the Policy Period.

    B. We insure **Property Insured**:

        1. Which you own;

        2. In which you have an insurable interest; or

        3. Which you lease or rent from others under a written agreement.

For coverage to apply to property leased or rented from others, you must be legally or contractually required to provide property insurance covering such property.[3]

[. . .]

**Section V. Extensions of Coverage**

F. Extension of Coverage Applicable to Property, Business Income, and Extra Expense Coverages:

    4. Newly Acquired Location Coverage

        a. (1) We will pay for direct physical loss or damage to **Property Insured** caused by or resulting from a **covered cause of loss** occurring at a newly acquired location not specifically described in the Declarations.

        (2) If the Declarations show a Limit of Insurance for Business Income and Extra Expense Coverage, then we will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the necessary **suspension** of **operations** during the **period of restoration**. The **suspension** must be due to direct physical loss or damage to property at a newly acquired location not specifically described in the

---

[3] Ex. A, § I.

Declarations caused by or resulting from a **covered cause of loss**.

b. (1) For each newly acquired location, Newly Acquired Location Coverage ends one hundred and twenty (120) consecutive calendar days from the date you acquire the location, on the date you report the values of the property to us, or on the date this Policy expires, whichever occurs first.

(2) When you report the values of the property to us, you will owe us additional premium from the date of acquisition or the date construction begins.

c. We will not pay Newly Acquired Location Coverage for:

(1) Any loss or damage to:

(a) **Property Insured** while in **transit**;

(b) **Buildings while in the course of construction** for which separate insurance coverage has been obtained and such separate insurance covers your interest;

(c) Property acquired through any foreclosure process that you have initiated; or

(2) Any loss, damage, or expense caused by or resulting from **earth movement** or **flood**, even if such causes of loss are insured by endorsement to this Policy.

d. The most we will pay under this Extension of Coverage in any one occurrence or **loss event** including **business income** and **extra expense** is the Limit of Insurance shown in the Declarations applicable to Newly Acquired Location Coverage.

13. In the Common Policy Conditions section, the Policy further states, "The policy's terms can be amended or waived only by endorsement issued by [Fireman's Fund] and made a part of this policy." (Exhibit A, Condition XIII.D.)

5

14. During the Policy period, when WIC sought to add a new location to its Policy, WIC's agent, Alliant would send a "Bind Order" to Fireman's Fund's underwriter requesting that a new location and/or Named Insured be added to the Policy. Typically, this request was sent after escrow had opened on the purchase of the new location by WIC or its designee. If Fireman's Fund agreed to the modification of the Policy, Fireman's Fund would respond to Alliant in writing, and then Fireman's Fund would issue an endorsement to modify the policy to add the new location and Named Insured.

## **THE PRESENT DISPUTE**

15. On July 18, 2022, WIC's insurance broker, Alliant, contacted Fireman's Fund via email regarding two potential property acquisitions by WIC. The first was property located in Helena, Montana, and the second was the Bakersfield Property located in Bakersfield, California. Alliant stated that the transaction for the Montana property was scheduled to close August 2, 2022, and the transaction for the Bakersfield Property was scheduled to close August 24, 2022. Alliant also advised that both properties "are well constructed and in good condition."

16. On July 28, 2022, in response to Alliant's email message, Fireman's Fund provided a preliminary quote estimating the additional premium for extending property and liability coverage under the Policy to both the Montana property and the Bakersfield Property. The quote for additional premiums was generated based on the preliminary information provided by Alliant, including the property address, building type, property size, whether the property was sprinklered, and Alliant's statement that the property was "well constructed and in good condition."

17. On August 3, 2022, Alliant notified Fireman's Fund that the closing date for the Montana property was being moved to August 22, 2022. However, Alliant did not mention the Bakersfield Property or otherwise indicate that WIC intended to proceed with insuring the Bakersfield Property.

18. On August 10, 2022, based on the new closing date for the Montana property, Fireman's Fund provided a new prorated estimate to add the Montana property to the Policy to Alliant. Again, the Bakersfield Property was not mentioned.

19. On September 8, 2022, Alliant confirmed that WIC had closed on the Montana property, and Fireman's Fund added the Montana property as Location 23 to the Location Schedule through Sequential Endorsement No. 8. But again, Alliant made no mention of the Bakersfield Property that was originally scheduled to close escrow on August 24, 2022. Accordingly, Fireman's Fund did not formalize its quote for the Bakersfield Property or offer to bind coverage for the Bakersfield Property, and considered the quote abandoned.

20. On September 9, 2022, a fire broke out on the Bakersfield Property at approximately 6:47 a.m. (PST) (the "Fire"). The buildings on the Property were reportedly destroyed by the Fire.

21. At approximately 12:49 p.m. (PST) on September 9, 2022, Alliant notified Fireman's Fund that WIC had closed on the Bakersfield Property. Alliant requested the Bakersfield Property be added to the Policy with an effective date of September 7, 2022. Fireman's Fund did not respond to this request.

22. On September 12, 2022, Alliant notified Fireman's Fund of the Fire at the Bakersfield Property and submitted a notice of loss. At the time Alliant provided the notice of loss, Alliant did not indicate that the Bakersfield Property was not owned by WIC or a Named Insured under the Policy, but rather was owned by White Lane.

23. On September 15, 2022, Fireman's Fund notified Alliant that the Bakersfield Property was not added to the Policy, coverage had not been bound, and there was a loss at the Bakersfield Property prior to the request to bind.

24. In fact, Fireman's Fund never confirmed to Alliant or WIC that coverage was bound for the Bakersfield Property or that White Lane was added as a

Named Insured, did not invoice WIC for any payment, and did not issue an endorsement adding the Bakersfield Property. Indeed, other than the pricing estimate that was provided to Alliant based on the original anticipated closing date for the Bakersfield Property of August 24, 2022, there was no other correspondence exchanged between Fireman's Fund and Alliant regarding binding of cover on the Bakersfield Property prior to the September 9, 2022 request on the date of the Fire. Thus, Fireman's Fund had not added the Bakersfield Property to the Policy, and had not added White Lane as a Named Insured, prior to the loss.

25. On September 19, 2022, Alliant informed Fireman's Fund for the first time that it had issued a Certificate of Insurance ("COI") for the Bakersfield Property and that WIC had paid a premium for the Bakersfield Property on September 8, 2022. Fireman's Fund was not previously aware of the COI or WIC's payment of a premium for the Bakersfield Property. However, Alliant is not authorized by Fireman's Fund to amend the Policy, issue a COI on Fireman's Fund's behalf, or invoice and collect premiums on Fireman's Fund's behalf.

26. Moreover, upon information and belief, White Lane is the legal entity that owns the Bakersfield Property. However, White Lane was never listed as a Named Insured on the Policy.

**HISTORY OF THE BAKERSFIELD PROPERTY**

27. Upon information and belief, the Bakersfield Property has a history of fires, with Bakersfield firefighters responding to at least thirty-eight fires over the last four years, including thirty fires that occurred in 2022 alone.

28. Upon information and belief, the Bakersfield Police Department also responded to over one hundred calls for service at the Bakersfield Property in 2022, including at least five calls relating to or involving fire.

29. Upon information and belief, WIC was aware of the history of fires and police department service calls on the Bakersfield Property prior to closing on September 9, 2022.

30. WIC did not disclose information concerning fires on the Bakersfield Property to Fireman's Fund, and Fireman's Fund was not aware of the Bakersfield Property's history with fires on July 28, 2022, when it provided Alliant with an estimate of the additional premiums to add the Bakersfield Property to the Policy.

31. However, had Fireman's Fund known of the Bakersfield Property's history of extensive fires, Fireman's Fund would not have offered to extend coverage to the Bakersfield Property on the same terms and/or would not have agreed to provide coverage for the Bakersfield Property under the Policy.

32. As previously alleged, on September 15, 2022, Fireman's Fund informed WIC that the Bakersfield Property had not been added to the Policy. Upon further investigation, on December 14, 2022, Fireman's Fund formally declined coverage for WIC's claimed loss at the Property pursuant to a reservation of rights.

33. On October 9, 2023, WIC brought suit against Fireman's Fund in California Superior Court for the County of Orange seeking declaratory relief, captioned *Wood Investment Company v. Fireman's Fund Insurance Company, et al.*, Case No. 30-2023-01351945-CU-IC-CXC (Orange County Superior Court) (the "WIC Action"). Following Fireman's Fund's timely removal of that action to the United States District Court in the Central District of California (Case No. 8:23-cv-2094-JWH(KESx)) on November 7, 2023, WIC voluntarily dismissed the WIC Action on November 20, 2023 before Fireman's Fund filed its response to WIC's Complaint.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment – No Duty to Indemnify)**

34. Fireman's Fund hereby re-alleges and incorporates by reference each allegation in Paragraphs 1-33 of its Counterclaim as though set forth fully herein.

/ / /

35. An actual, present, and justiciable controversy has arisen between Fireman's Fund and WIC concerning Fireman's Fund 's duty to indemnify WIC for the loss sustained in connection with the Fire at the Bakersfield Property.

36. There is no coverage under the Policy because the Bakersfield Property was not added to the Policy.

37. Additionally, there is no coverage because the entity that owns the Bakersfield Property, White Lane, is not a Named Insured on the Policy.

38. As a result, Fireman's Fund has no duty to indemnify WIC for any losses sustained in connection with the Fire on the Bakersfield Property.

39. Accordingly, Fireman's Fund is entitled to a declaration that it is not required to indemnify WIC with respect to any losses at the Bakersfield Property.

## SECOND CAUSE OF ACTION
### (Rescission)

40. Fireman's Fund hereby re-alleges and incorporates by reference each allegation in paragraphs 1-39 of its Counterclaim as though set forth fully herein.

41. WIC, in applying for commercial property and fire insurance for the Bakersfield Property under the Policy from Fireman's Fund, had a duty to disclose all facts material to the risk that WIC asked Fireman's Fund to undertake.

42. The occurrence of several fires in the years and months leading up to White Lane's acquisition of the Bakersfield Property was material to the risk that WIC was asking Fireman's Fund to undertake for the policy period of November 30, 2021 to November 30, 2022.

43. Upon information and belief, when WIC applied to add the Bakersfield Property to the Policy for the policy period of November 30, 2021 to November 30, 2022, and leading up to White Lane's acquisition of the Bakersfield Property, several fires had occurred.

///

///

44. Upon information and belief, WIC, by and through Alliant, represented that the Bakersfield Property was "well constructed and in good condition."

45. Upon information and belief, WIC had knowledge of the condition of the Bakersfield Property and conditions at the Bakersfield Property that made it more susceptible to fire damage and the occurrence of several fires at the Bakersfield Property prior to and leading up to the acquisition of the Bakersfield Property.

46. WIC did not disclose the occurrence of these fires at the Bakersfield Property when it requested that the Bakersfield Property be added to the Policy for the policy period of November 30, 2021 to November 30, 2022. Specifically, WIC concealed the fact that approximately thirty-eight fires occurred at the Bakersfield Property over the last four years, thirty of which occurred in 2022 alone, and just prior to White Lane's acquisition of the Bakersfield Property.

47. If Fireman's Fund had known of the fires that occurred at the Bakersfield Property, Fireman's Fund would not have offered to extend coverage to the Bakersfield Property on the same terms or would not have agreed to provide coverage for the Bakersfield Property under the Policy.

48. To the extent the Policy is reformed to add the Bakersfield Property and/or White Lane to the Policy, Fireman's Fund is entitled to rescind coverage for the Bakersfield Property under the Policy, pursuant to Section 330 *et seq.* of the California Insurance Code and/or common law.

49. Accordingly, and in the alternative, in the event that the Court does not enter judgment in Fireman's Fund 's favor on Count I, the Court should enter an order declaring coverage to WIC for the Bakersfield Property under the Policy is void or voidable and granting Fireman's Fund 's request that coverage to WIC for the Bakersfield Property under the Policy be rescinded.

///

# **PRAYER FOR RELIEF**

WHEREFORE, Fireman's Fund prays for the following relief and for judgment against WIC as follows:

50. For judgment declaring that the Bakersfield Property was not added as an insured Location to the Policy and that White Lane is not a Named Insured;

51. For judgment declaring that the Policy does not insure White Lane or the Bakersfield Property;

52. For judgment declaring that Fireman's Fund has no duty to indemnify WIC under the Policy for any claim arising out of or related to the Bakersfield Property;

53. For judgment declaring that Fireman's Fund has no obligation to pay amounts to WIC in connection with the losses sustained as a result of damages on or to the Bakersfield Property;

54. In the alternative, for judgment declaring that the Policy is rescinded with respect to the Bakersfield Property and/or White Lane;

55. An award to Fireman's Fund for its costs in this litigation; and

56. An award to Fireman's Fund of such other and further relief as the Court may deem just and proper.

Dated: November 22, 2023    TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Steven D. Allison*
    Steven D. Allison
    Christy A. Markos
    Attorneys for Plaintiff
    FIREMAN'S FUND INSURANCE COMPANY